UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
                                          |
TERRILYN BELL-COKER, Individually and as Personal    |    Case No. 1:07-cv-812
Representative of the Estate of MARTELL COKER,       |
Deceased,                                            |
                                          |
    Plaintiff,                            |    HONORABLE PAUL L. MALONEY
                                          |
    v.                                    |
                                          |
CITY OF LANSING, a Municipal Corporation, |
Lansing Police Officer AARON TERRILL,     |
Lansing Police Officer JASON PUNG,        |
Lansing Police Officer LORIEN WILLIAMS,   |
Lansing Police Officer DENNIS BUNCH,      |
Lansing Police Officer SGT DEL KOSTANKO,  |
Lansing Police Officer KEVIN SCHLAGE,     |
Lansing Police Officer BETH LARABEE,      |
Lansing Police Officer CEDRIC FORD,       |
Lansing Police Officer MANDI BRUNNER,     |
individually and in their official capacities,       |
                                          |
    Defendants.                           |
_____

**Opinion and Order**
**Granting the Defendants' Motion for Summary Judgment on the Federal Claim;
Declining Supplemental Jurisdiction over the State-Law Claims; Denying Defendants' Motion in
Limine; Terminating and Closing the Case**

This is a civil-rights action under 42 U.S.C. §§ 1983 and 1988, with pendent claims under Michigan state statutory and common law. *See* Complaint filed August 20, 2007 ("Comp") ¶ 1. Plaintiff Terrilyn Bell-Coker ("Coker"), the mother of the late Martell Coker ("the decedent"), proceeding individually and as personal representative of the decedent's estate, alleges that the City of Lansing ("the City") and nine named City of Lansing Police Officers (collectively "the officers") "willfully refused to provide or secure or facilitate medical help or assistance to Plaintiff's

deceased[,] violating the deceased's rights under the Fourth and Fourteenth Amendments to the United States Constitution", causing the decedent to die. Comp ¶¶ 2 and 5. Coker further alleges that the officers used excessive force against the decedent, "preventing him from seeking medical attention on his own when he had the ability to do so." *Id.* Finally, Coker alleges that the City and its Police Sergeant Del Kostanko ("the sergeant") expressly or implicitly authorized the officers' conduct, and failed to train, supervise, and investigate the officers. *Id.*

Coker asserts one federal claim, count one, a § 1983 claim alleging the officers' violation of the decedent's Fourth and Fourteenth Amendment rights to be free from unreasonable seizure and the use of excessive force. *See* Comp ¶¶ 34-38.[1]

---

[1]
Coker's opposition brief stated, "Plaintiff voluntarily dismisses Count II against the City of Lansing, Count III: Supervisory Liability, and Count VIII - Wrongful Death." Coker's Opp at 1.

Count two was a § 1983 claim alleging that the City had a policy and practice of preventing rescue of individuals in need of medical help without providing reasonable alternatives. *See* Comp ¶¶ 39-42. Count three sought to impose supervisory liability on the sergeant for violating the decedent's Fourth and Fourteenth Amendment rights by engaging in, directing, encouraging, acquiescing in, failing to prevent, and failing to investigate his officers' use of excessive force and deliberately indifferent prevention of the decedent getting needed medical care. *See* Comp ¶¶ 43-47.

Coker's opposition brief also requested the voluntary dismissal of one of her five state-law claims. Count eight alleged wrongful death, *see* Comp ¶¶ 63-64, and paragraph 38h of the complaint, although part of a claim denominated as a § 1983 claim, mentioned a claim for wrongful death under MICH. COMP. LAWS § 600.2922.

Coker did not file a separate motion for voluntary dismissal of those three claims, nor did she state that she consulted with opposing counsel before making that motion (as required by W.D. Mich. LCivR 7.1), nor did she specify whether the dismissal should be with or without prejudice. Overlooking these defects, the court issued an opinion and order on Thursday, January 8, 2009 that conditionally offered Coker the dismissal without prejudice of counts 2, 3 and 8. *See Bell-Coker v. City of Lansing et al.*, No. 1:07-cv-812, 2009 WL — (W.D. Mich. Jan. 8, 2009) (Paul L. Maloney, C.J.). The order authorized Coker to withdraw her request for voluntary dismissal of those three claims no later than Friday, January 16, 2009. *Id.* at *__. The order provided that if Coker did not withdraw her request for voluntary dismissal by that date, the court would dismiss counts 2, 3 and 8 without prejudice on Monday, January 19, 2009. *Id.* at *__.

Coker also asserts four claims under state law against all the defendants: count four alleges intentional infliction of emotional distress ("IIED"), *see* Comp ¶¶ 48-51; count five alleges negligent infliction of emotional distress ("NIED"), *see* Comp ¶¶ 52-55; count six alleges gross negligence, *see* Comp ¶¶ 56-59; and count seven alleges assault and battery, *see* Comp ¶¶ 60-62. On the federal claim and the state claims, Coker sues the sergeant and all the officers in their individual and official capacities, *see* Comp ¶ 8, and she demands a jury trial, *see* Comp at 1.

In July 2008, all the defendants filed a joint motion for summary judgment. In August 2008, Coker filed an opposition brief, and in September 2008 the defendants filed a reply brief. For the reasons that follow, the court will grant summary judgment to the defendants on the lone federal claim (count one) and decline supplemental jurisdiction over all remaining state-law claims (counts four, five, six and seven).

**BACKGROUND**

On March 7, 2005, the officers responded to a report that there had been gunfire and an injury at the Cokers' home; at about the same time, government and private emergency medical services ("EMS") were dispatched to that location. Comp ¶¶ 13-15. The officers arrived at the same time as EMS personnel and told them to wait before approaching the Cokers' home. Comp ¶¶ 16 and 19. As the officers approached the Cokers' home, they were immediately met by Ms. Coker, who told them that her son Martell had been shot and needed immediate medical attention. Comp ¶ 17. Coker alleges that as the officers walked towards the house, they saw Martell through the open front door,

---

The Friday, January 16, 2009 deadline passed without Coker filing a notice withdrawing her request for voluntary dismissal of counts 2, 3 and 8. Accordingly, on Monday, January 9, 2009, the court dismissed counts 2, 3 and 8 without prejudice.

lying on the floor in the front hallway. Comp ¶ 18. When the officers entered the home, they saw Martell on the floor, obviously injured, fading in and out of consciousness, trying to get up from the floor, and in urgent need of medical care. Comp ¶¶ 20-22. Martell did get up and started walking, with Ms. Coker's help, toward the front door; although Ms. Coker repeatedly pleaded with the officers to help her son get to the EMS vehicle, they grabbed Martell, prevented him from leaving the house, and twice pulled him back into the house, away from the front door and the EMS personnel who were just outside. Comp ¶¶ 23-29. The officers also forced Ms. Coker out of her home. Comp ¶ 30. After an unspecified period of time, Ms. Coker saw the officers drag Martell to the front door, pick him up, and throw him onto the lawn, where he landed on his head. Comp ¶ 31. She then saw the officers pick Martell off the grass and carry him to a waiting EMS vehicle, but he died from his gunshot wounds. Comp ¶¶ 32-33.

The defendants respond that Officer Terrill twice asked Martell who had shot him and Martell said that he did not know. The defendants also allege that it was difficult to get any information from Martell because three people were shouting vulgarities at Officer Terrill – Ms. Coker, Martell's grandfather, and an unidentified white woman. The defendants emphasize that Officer Terrill was unsure whether the shooter was still in the house and, accordingly, initially asked Martell to stay on the floor for the sake of safety. After some time, and again out of fear that the shooter could still be in the house, the officers ordered everyone out of the house, and they "assisted" Martell in going outside where he was "placed" on the lawn. The defendants deny that the officers ever pulled Martell farther into the house and away from the front door, or that they dragged Martell to the front door and threw him onto the lawn.

The defendants also allege that when Officer Terrill told Ms. Coker that she had to leave the

house because the shooter could still be there, she responded, "f— off, this is my house" and twice walked towards an unsecured room. Officer Terrill grabbed Ms. Coker and brought her outside.

When the officers removed everyone from the house, they instructed them to lie on the ground in order to stay below the level of the windows where the shooter might have been. MSJ x 4, Affidavit of Sergeant Del Kostanko ("Kostanko Aff"). Because Ms. Coker began yelling that Martell had been shot, Sergeant Kostanko requested "another" ambulance. Ex 4, Kostanko Aff. (It is unclear why Martell could not be taken to the hospital in one of the EMS vehicles that were, according to Coker's account, already present.) Ambulance Unit #43 was immediately dispatched to the scene at 11:03 p.m. *See* MSJ Ex 2, Lansing Fire Departments and Tri-County EMS records.

Sergeant Kostanko repeatedly asked Martell who had shot him, but Martell did not answer. MSJ Ex 4, Kostanko Aff. The sergeant then directed Officers Callison and Glynn to "rescue carry" Martell to the Lansing Fire Department ambulance staging area; they carried him to the south parking lot, where he was treated by paramedics in Ambulance Unit #48. MSJ Ex 4, Kostanko Aff. Unit 43 arrived at 11:07 p.m. (four minutes after it was called) and assumed the care of Martell. MSJ Ex 2, Lansing Fire Dep't and Tri-County EMS records.

Officer Terrill reentered the front of the Cokers' house to secure two bedrooms while he waited for the arrival of a START team to secure the entire residence. *See* MSJ Ex 3, Terrill Aff. Officers Bunch, Pung and Williams began to clear the west part of the house, but took cover when they heard a loud crashing sound in the kitchen. MSH Ex 1, Pung Aff. Officers Ford, Schlaegl and Bakos secured the southwest corner of the house until START arrived.

Without contradiction from Coker, the defendants provide records showing that the first ambulance, Unit #48, was dispatched at 10:56 pm, arrived at the Cokers' house at 11:00 pm, had one

-5-

Ramsey Wallace on the way to the hospital at 11:09 pm, and arrived at the hospital at 11:14 pm. MSJ Ex 2, LFD and EMS records. Also without contradiction from Coker, the defendants provide records showing that the second ambulance, Unit #48, was dispatched only seven minutes after the first ambulance (11:03 pm) arrived at the Coker house four minutes later (11:07 pm), had Martell Coker on the way to the hospital just seven minutes later (11:14 pm), and arrived at the hospital in four minutes (11:18 pm). *Id.*

Uncontested records show that Martell Coker was officially admitted to Sparrow Hospital at 11:21 pm (three minutes after his ambulance arrived), intubated and placed on a ventilator at 11:30 pm, given a transfusion of two blood packets at 11:58 pm, and transferred to the operating room at 11:59 pm. MSJ Ex 2, LFD and EMS records. His chart showed two gunshot wounds to the chest, massive hemorrhage, and "abdominal chest packing." *Id.* Surgery began at 12:09 am and ended at 3:21 am, and Martell was taken from the operating room at 3:50 am. *Id.* Between 5:15 an 5:35 am, Martell experienced uncontrollable hemorrhaging, and he was pronounced dead at 6:02 am. *Id.*

## SUMMARY JUDGMENT

Summary judgment is proper if the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Appalachian Railcar Servs., Inc. v. Consumers Energy Co.*, – F. Supp.2d –, 2008 WL 828112, *13 (W.D. Mich. Mar. 25, 2008) (Maloney, J.) ("ARS") (quoting *Conley v. City of Findlay*, 266 F. App'x 400, 404 (6th Cir. 2008) (Griffin, J.)); *see also Patterson v. Hudson Area Schools*, – F.3d –, –, 2009 WL 22859, *6 (6th Cir. Jan. 6, 2009) (quoting FED. R. CIV. P. 56©). *Accord Brown v. Brown*, 739 N.W.2d 313,

316 (Mich. 2007); *Wiedyk v. Poisson*, 2009 WL 30456, *1 (Mich. App. Jan. 6, 2009) (p.c.) (P.J. Murray, JJ. Markey & Wilder) (citing MICH. CT. R. 2.116(C)(10)).

The movant has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Conley*, 266 F. App'x at 404 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, the movant "need not support its motion with affidavits or other materials 'negating' the opponent's claim"; rather, the movant's initial burden is only to "point out to the district court that there is an absence of evidence to support the nonmoving party's case . . . ." *Wilson v. Continental Dev. Co.*, 112 F. Supp.2d 648, 654 (W.D. Mich. 1999) (Bell, J.) (citing *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993)), *aff'd o.b.*, 234 F.3d 1271, 2000 WL 1679477 (6th Cir. 2000).

Once the movant has met its burden, the non-movant must present "significant probative evidence" to demonstrate that there is more than "some metaphysical doubt as to the material facts." *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Conley*, 266 F. App'x at 404 (quoting *Moore*, 8 F.3d at 339-40)). The non-movant may not rest on the mere allegations of his pleadings. *Wilson*, 112 F. Supp.2d at 654 (citing FED. R. CIV. P. 56(e) and *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)).[2] Moreover, the mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; there must be some genuine issue of *material* fact. *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Conley*, 266 F. App'x at 404 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986))).

---

[2] *Accord Healing Place at No. Oakland Med. Ctr. v. Allstate Ins. Co.*, 744 N.W.2d 174, 177 (Mich. App. 2007) ("When the burden of proof at trial would rest on the nonmoving party, the nonmovant may not rest on mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial.") (citing *Quinto v. Cross & Peters Co.*, 547 N.W.2d 314, 317 (Mich. 1996)).

The court must accept the non-movant's factual allegations, *ACLU v. NSA*, 493 F.3d 644, 691 (6th Cir. 2007) (concurrence) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)), *cert. denied*, – U.S. –, 128 S.Ct. 1334 (2008),[3] and view the evidence in the light most favorable to the non-movant, giving it the benefit of all reasonable inferences. *Fox v. Eagle Dist. Co., Inc.*, 510 F.3d 587, 592 (6th Cir. 2007) (Griffin, J.); *see also Patterson v. Hudson Area Schools*, – F.3d –, –, 2009 WL 22859, *6 (6th Cir. Jan. 6, 2009).[4]

But the court considers evidence only to the extent that it would be admissible at trial. *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Healing Place*, 744 N.W.2d at 177 (citing MICH. CT. R. 2.116(G)(6) and *Veenstra v. Washtenaw Country Club*, 645 N.W.2d 643, 648 (Mich. 2002))).

Ultimately, "[e]ntry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party w[ould] bear the burden of proof at trial.'" *ARS*, – F. Supp.2d at –, 2008 WL 828112 at *13 (citing *Davison v. Cole Sewell Corp.*, 231 F. App'x 444, 447 (6th Cir. 2007) (quoting *Celotex*, 477 U.S. at 322)).[5] As Chief Judge Bell has characterized the post-trilogy summary-judgment standard,

---

[3] *Accord Fall v. Loudon*, 2008 WL 375989, *6 (Mich. App. Feb. 12, 2008) (citing *Dolan v. Continental Airlines/Continental Express*, 563 N.W.2d 23, 26 (Mich. 1997)).

[4] *Accord Denha v. Dart Props., Inc.*, 2009 WL 30459, *1 (Mich. App. Jan. 6, 2009) (p.c.) (P.J. Zahra, JJ. O'Connell & Fort Hood) (citing *Walsh v. Taylor*, 689 N.W.2d 506, 511 (Mich. App. 2004) (citing *Spiek v. MDOT*, 572 N.W.2d 201 (Mich. 1998))).

[5] A trilogy of 1986 Supreme Court decisions "made clear that, contrary to some prior precedent, the use of summary judgment is not only permitted but encouraged in certain circumstances . . . ." *Collins v. Assoc'd Pathologists, Ltd.*, 844 F.2d 473, 475-76 (7th Cir. 1988). *Accord In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880 (11th Cir. 2003) (the trilogy "encourage the use of summary judgment as a means to dispose of factually unsupported claims.");

*Hurst v. Union Pacific Rail Co.*, 1991 WL 329588, *1 (W.D. Okla. 1991) ("This trilogy of

"[w]hile preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are now vigilant to weed out fanciful, malicious, and unsupported claims before trial." *Wilson*, 112 F. Supp.2d at 654.

## DISCUSSION:  Federal Claim (Count 1)

In her attempt to show the existence of a genuine issue of material fact on the federal claim, count one, Coker proffers affidavits from Terrilynn Bell-Coker (decedent's mother), Rebecca Newman (a woman who was present at the time of the incident), and Essie Bell (decedent's grandfather).  *See* Coker's Opp, Exhibits 1-3.

It is undisputed that the defendants properly noticed the deposition of Ms. Coker for May 19, 2008, *see* MSJ Reply Ex 1; that neither Ms. Coker nor her attorney appeared at the deposition; and that that fact was placed on the record at the time and place scheduled for the deposition.  *See* MSJ Ex 6 or MSJ Reply Ex 2 (Transcript of Intended Deposition of Terrilynn Bell-Coker on May 19, 2008).  Coker does not claim that she did not receive the Notice of Deposition, nor does she claim that she sought to re-schedule the deposition.  It is also undisputed that Coker's expert reports were due on May 23, 2008 and that she has never submitted any such reports.

The defendants contend that as a discovery sanction pursuant to FED. R. CIV. P. 37(d)(3), the court should bar Coker from presenting her August 7, 2008 affidavit.  *See* MSJ at 6.  The defendants

---

cases establishes that factual and credibility conflicts are not necessarily enough to preclude summary judgment and encourage that a summary judgment be used to pierce the pleadings and determine if there is in actuality a genuine triable issue."), *aff'd*, 958 F.2d 1002 (10th Cir. 1992);

*Bowser v. McDonald's Corp.*, 715 F. Supp. 839, 840 (S.D. Tex. 1989) (the trilogy "encouraged federal district courts to use summary judgment more frequently and economically by changing the movant's burden of production . . . and by allowing qualitative review of evidence") (citations omitted).

also contend that because Coker failed to disclose Rebecca Newman and Essie Bell as "individual[s] likely to have discoverable information", as required by FED. R. CIV. P. 26(a)(1)(A)(I), the court should exercise its FED. R. CIV. P. 37(c)(1) authority to bar Coker from presenting their affidavits dated August 7, 2008. The court agrees on both scores.

**Exclusion of Bell-Coker affidavit. FED. R. CIV. P. 37(d)(1)(A)(I)**, entitled Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection, provides, in pertinent part, "The court where the action is pending may, on motion, order sanctions if (I) a party . . . fails, after being served with proper notice, to appear for that person's deposition . . . ." FED. R. CIV. P. 37(d)(1)(A)(I). "Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(I)-(vi)," FED. R. CIV. P. 37(d)(3), namely:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) *prohibiting the disobedient party from* supporting or opposing designated claims or defenses, or from *introducing designated matters in evidence*;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party . . . .

FED. R. CIV. P. 37(b)(2)(A)(I)-(vi) (emphasis added). Exercising its discretion under FED. R. CIV. P. 37(d)(3) and FED. R. CIV. P. 37(b)(2)(A)(ii), the court prohibits Bell-Coker from introducing her own affidavit, due to her unexplained non-compliance with a properly noticed deposition.

**Exclusion of Newman and Bell affidavits. FED. R. CIV. P. 37(c)(1)**, entitled Failure to Disclose or Supplement, provides, in pertinent part, "*If a party fails to* provide information or

-10-

*identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion*, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Emphasis added.[6] Rule 37(c)(1) states in mandatory terms, without qualification, "the party *is not allowed* to use that information or witness to supply evidence on a motion . . . ." *See Big Lots Stores, Inc. v. Luv 'N Care, Ltd.*, 2008 WL 5110961, *6 (6th Cir. De. 4, 2008) (Roger, J.) ("'Federal Rule of Civil Procedure 37(c)(1) requires absolute compliance with Rule 26(a), that is, it mandates that a trial punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'") (quoting *Roberts v Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)); *SPX Corp. v. Baxter USA, LL*, 574 F. Supp.2d 748, 755 (E.D. Mich. 2008) ("[T]he language of Rule 37 suggests that exclusion is mandatory in these circumstances, and the Sixth Circuit has cited with approval a Seventh Circuit decision to that effect.") (citing, *inter alia*, *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004)).

It is the potentially sanctioned party, in this case Bell-Coker, who has the burden of proving that the failure to attend and the failure to disclose were substantially justified or harmless. *Potluri v. Yalamanchili*, 2008 WL 5060574, *2 (E.D. Mich. Nov. 24, 2008) (citing *Vaughn v. Homegoods, Inc.*, 2008 WL 4239505 (E.D. Mich. Sept. 11, 2008) (Cleland, J.)) and *Helmi v. Solvay Pharms., Inc.*, 2006 WL 3344651, *7 (W.D. Mich. Nov. 17, 2006) (Quist, J.) ("Plaintiff, as the potentially

---

[6]

Where the motion seeks sanctions for failure to answer interrogatories or respond to a request for production, the movant must "include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." FED. R. CIV. P. 37(d)(1)(B). The Rule does not require such consultation and certification, however, where the movant seeks sanctions for a party's failure to attend its own properly-noticed deposition.

sanctioned party [under Rule 37(c)(1)], bears the burden of proving that the failure to amend a prior response was harmless.") (citing *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)).

There is no evidence that Bell-Coker's failure to identify and disclose Newman and Bell was substantially justified; for example, Bell-Coker has not explained why she failed to seek an extension of time in which to file the required witness disclosures, or why she failed to appear for her own deposition or seek a new date for the deposition. *See Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 636-37 (6th Cir. July 19, 2007) (in holding that district court did not abuse discretion by excluding proffered expert witness, stating, "[p]laintiffs have not explained why they failed to seek an extension of the expert disclosure deadline from the district court") (citing, *inter alia*, *Bowe v. CON-Rail*, 2000 WL 1434584, *3 (6th Cir. Sept., 19, 2000)); *cf. Gass v. Marriott Hotel Serv., Inc.*, 501 F. Supp.2d 1011, 1016 (W.D. Mich. 2007) (Bell, C.J.) ("Plaintiffs admit that their expert report was untimely, but contend that the untimely disclosure was due to late discovery responses from defendants. They also note that Defendants also submitted late expert reports. * * * Plaintiffs' asserted excuses do not provide substantial justification for their failure to comply with the provisions of Rule 26(a)(2).").

Absent any argument that Bell-Coker's failure to identify and disclose Newman and Bell was "substantially justified" or "harmless", the court must prohibit Coker-Bell from using their affidavits in opposing this summary-judgment motion. *See Dorrough v. Tarpy*, 260 F. App'x 862 (6th Cir. 2008) (Keith, Rogers, U.S.D.J. Ann Aldrich) ("[T]he Durroughs failed to submit their list of expert witnesses pursuant to Rule 26(a)(2) by May 16, 2006, as required by the scheduling order, and still had not filed their list by the time the district court granted summary judgment. Even if the

Durroughs were to locate an expert for trial, they would likely be barred from introducing testimony of that expert at trial under Rule 37(c)(1), preventing them establishing a prima facie case of malpractice."); *Vaughn v. City of Lebanon*, 18 F. App'x 252, 264 (6th Cir. 2001); *Labadie v. Dennis*, 2008 WL 5411901, *3 (W.D. Mich. Dec. 23, 2008) (Scoville, M.J.) ("[a]ny medical record not produced as required by this order will be excluded from plaintiff's case-in-chief at trial and motion practice, as required by Rule 37(c)(1) . . . ."); *Henry v. Quicken Loans, Inc.*, 2008 WL 4735228, *5 (E.D. Mich. Oct. 15, 2008) (Pepe, M.J.) ("Nor is reopening discovery and further delaying this case an adequate solution. If courts are lax in enforcing scheduling deadlines, and allow a party to obtain an unfair advantage by sneaking in evidence not obtained in compliance with the court's orders, it will erode the force and effect of the court's orders, and impede the efficient administration of justice. For all of these reasons, the factual declarations of these six witnesses not disclosed on the preliminary witness list and not obtained during fact discovery are stricken and may not be used in support of . . . summary judgment [motions] . . . .").[7]

Without the Bell-Coker, Newman, and Bell affidavits, Bell-Coker cannot show any genuine issue of material fact as to her lone federal claim, and the defendants are entitled to summary

---

[7]

*See Quinn v. Kennedy*, 2008 WL 4145445, *1 (W.D. Mich. Aug. 20, 2008) (Scoville, M.J.) (referring to earlier order that "precluded plaintiff from using at trial or in support of or opposition to any motion[,] any exhibit or witness that plaintiff had failed to disclose as required by FED. R. CIV. P. 26(a)(1) . . . . This preclusion order was entered as a sanction under Rule 37(c)(1).");

*Woodhull v. County of Kent*, 2006 WL 2035446, *2 (W.D. Mich. July 18, 2006) (Miles, J.) (striking affidavit of proffered expert witness as Rule 37(c)(1) sanction for failure to disclose);

*St.-Gobain Corp. v. Gemtron Co.*, 2006 WL 1307890 (W.D. Mich. May 9, 2006) (Miles, J.);

*Roberts v. McNay*, 2003 WL 25683928 (W.D. Mich. May 19, 2003) (Brenneman, M.J.);
*In re Jackson Nat'l Life Ins. Co. Premium Lit.*, 2000 WL 33654070 (W.D. Mich. Feb. 8, 2000) (McKeague, D.J.) (affirming Magistrate's exclusion of witness as Rule 37(c)(1) sanction).

judgment on that claim.

This disposition obviates the need to consider the defendants' alternative arguments that count one (the 42 U.S.C. § 1983 claim against the individual officers for Fourth and Fourteenth Amendment violations) lacks merit, *see* MSJ at 7-10 and Reply at 3; that the officers are entitled to qualified official immunity, *see* MSJ at 10-13 and Reply at 3; and that official-capacity claims against the officers must be dismissed because they are actually claims against the City of Lansing itself, which is a named defendant, *see* MSJ at 13-14.

**DISCUSSION: State-Law Claims (Counts 4-7)**

That leaves only Coker's state-law claims. The court has supplemental jurisdiction over those claims, but our Circuit emphasizes that "'[s]upplemental jurisdiction is a doctrine of discretion . . . not of right.'" *Hendrixson v. BASF Const. Chems. LLC*, – F. Supp.2d –, –, 2008 WL 3915156, *20 (W.D. Mich. Aug. 20, 2008) (Paul L. Maloney, C.J.) (quoting *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003)). *See also Baer v. R&F Coal Co.*, 782 F.2d 600, 602 (6th Cir. 1986) (p.c.) (Krupansky, Guy, U.S.D.J. Suhrheinrich) (citing *UMWA v. Gibbs*, 383 U.S. 715, 726 (1966)); *Lake v. Granholm*, 2008 WL 724162, *14 (W.D. Mich. Mar. 17, 2008) (Jonker, J.) (quoting *Habich*).

Having disposed of Coker's federal claims prior to trial, the court exercises its discretion under 28 U.S.C. § 1367(c)(3) and declines supplemental jurisdiction over the claims which arise under state law. *See Allen v. City of Sturgis*, 559 F. Supp.2d 837, 852 (W.D. Mich. 2008) (Maloney, J.) ("'[A] federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims.'") (citing, *inter alia*, *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citing 28 U.S.C. § 1367(c)(3) and *UMWA*, 383 U.S. at 726 ("Certainly if the

federal claims are dismissed before trial . . . the state claims should be dismissed as well.")), *cert. denied*, – U.S. –, 127 S.Ct. 1832 (2007)); *see also Musson Theatrical, Inc. v. Fed Ex Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . .").

The interests of justice and comity are best served by deferring to Michigan's courts, which are best equipped to interpret and apply their own State's law in the first instance. *See Allen*, 559 F. Supp.2d at 852 (citing, *inter alia*, *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 585 (6th Cir. 2005) ("We hold that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state law issues based on its consideration of the interests of justice and comity best served by a state court's resolution of the remaining state law claims.")); *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991) (noting that only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial").[8] [9]

---

[8]

*See, e.g.,* exercising 28 U.S.C. § 1376(c)(3) discretion to decline supplemental over state-law claims and dismiss those claims without prejudice:

*Thornton v. Fed Ex Corp.*, 530 F.3d 451, 454 n.1 (6th Cir. 2008) (noting, "[t]he district court awarded summary judgment to Fed Ex on plaintiff's claims under federal law and then, declining to exercise continuing supplemental jurisdiction, dismissed the state law claims without prejudice.");

*Rayyan v. Sharpe*, 2008 WL 4601427, *8-9 (W.D. Mich. Oct. 15, 2008) (Maloney, C.J.);
*MEE Pension Fund v. EE&D*, 556 F. Supp.2d 746, 782 (W.D. Mich. 2008) (Maloney, J.);
*Moscardelli v. Mich. Laborers Health Care Fund*, 2008 WL 762237, *4 n.7 (W.D. Mich. Mar. 19, 2008) (Maloney, J.);
*Marr v. Case*, 2008 WL 191326 (W.D. Mich. Jan. 18, 2008) (Maloney, J.);

*Westberg v. Russell*, 2008 WL 205208, *1 (W.D. Mich. Jan. 23, 2008) (Enslen, J.);
*Poindexter v. McKee*, 444 F. Supp.2d 783 (W.D. Mich. 2006) (Miles, J.);
*Reinhardt v. Dennis*, 399 F. Supp.2d 803, 811 (W.D. Mich. 2005) (McKeague, J.);
*Glover v. Elliott*, 2007 WL 4557853, *5 (W.D. Mich. Dec. 21, 2007) (Bell, C.J.);

**ORDER**

The defendants' motion for summary judgment [document # 40] is **GRANTED in part and DENIED without prejudice in part.**

**Summary judgment is GRANTED to all the individual defendants on count one**.

Pursuant to 28 U.S.C. § 1367(c), the court **DECLINES supplemental jurisdiction over all state-law claims.**

Defendant's **Motion in Limine to Preclude Evidence of Any Damages Relating to Wrongful Death, International Torts and/or Section 1983** (document #58) is **DENIED** without prejudice as moot**.**

Counts four, five, six and seven (IIED, NIED, Gross Negligence, and Assault & Battery) are **DISMISSED without prejudice.**

This case is **TERMINATED** and **CLOSED**.

This is a final and appealable order.  As to the federal claim, *see Automatic Logistic Productivity Improvement Sys., LLC v. UHY Advisors, Inc.*, 2007 WL 2292013, *1 (6th Cir. Aug. 8,

---

*Forner v. Robinson Twp. Bd.*, 2007 WL 2284251, *8 (W.D. Mich. Aug. 7, 2007) (Quist, J.);
*Henderson v. Caruso*, 2007 WL 1876471 (W.D. Mich. June 28, 2007) (Greeley, M.J.);
*Herron v. Caruso*, 2005 WL 1862036, *6 (W.D. Mich. Aug. 2, 2005) (Edgar, J.);

*Faller v. Children's Hosp.*, 2009 WL 29878, *2 (S.D. Ohio Jan. 5, 2009) (Susan Dlott, C.J.).

[9]

When a federal court declines to exercise supplemental jurisdiction over state-law claims,

the claims will be dismissed and must be refiled in state court.  To prevent the
limitations period on those claims from expiring while they are pending in federal
court, [28 U.S.C.] § 1367(d) requires state courts to toll the period while a
supplemental claim is pending in federal court and for 30 days after its dismissal
unless state law provides for a longer tolling period.

*Jinks v. Richland Cty., S.C.*, 538 U.S. 456, 456 (2003) (Scalia, J.) (syllabus).

2007) (a district court's exclusion of testimony or affidavits under FED. R. CIV. P. 37(c)(1) is reviewed only for abuse of discretion) (citing *Dickenson*, 388 F.3d at 983). As to the state-law claims, *see Reynosa v. Schultz*, 282 F. App'x 386, 390-91 (6th Cir. 2008) ("We review a district court's decision to exercise pendent [supplemental] jurisdiction for clear error, meaning that this court will not reverse unless the court below 'relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard . . . .'") (citing *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) and quoting *US v. Chambers*, 441 F.3d 438, 446 (6th Cir. 2006)).[10]

**IT IS SO ORDERED this 21st day of January 2009.**

/s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge

---

[10]

*Accord Miller v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 731 (7th Cir. 2001) (Bauer, Easterbrook & Manion) ("A district court's decision to 'relinquish pendent jurisdiction before the federal claims have been tried is . . . the norm, not the exception, and such a decision will be reversed only in extraordinary circumstances.'") (citation omitted).